UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMONE NETTLES,

    Plaintiff,

v.

FALCK NORTHERN CALIFORNIA CORP.,

    Defendant.

Case No. 24-cv-01640-RS

**ORDER GRANTING MOTION TO REMAND**

## I. INTRODUCTION

In this putative wage and hour class action, Plaintiff Simone Nettles asserts Defendant Falck Northern California Corporation ("Falck"), a provider of emergency medical services to Alameda County, violated various provisions of California state law. Nettles originally filed this case in Alameda County Superior Court. Falck removed to federal court on March 15, 2024, asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331 on the grounds that several of Nettles' state law claims are preempted by the Labor Management Relations Act ("LMRA") because they depend on the interpretation of a collective bargaining agreement ("CBA"). Nettles now moves to remand, arguing Falck's removal was procedurally improper and that Falck failed to demonstrate any claims require interpretation of the CBA. For the reasons below, the motion to remand is granted.[1]

---

[1] Falck requests that judicial notice be taken of several complaints with "verbatim allegations" filed by counsel for Plaintiff in other actions. Dkt. 18, at 7. Nettles does not oppose this request. Court filings are the appropriate subjects of judicial notice, and Falck's request is granted. *See United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (holding courts may "take notice of

## II. BACKGROUND

Falck "took over as the exclusive provider of 911 transport for Alameda County" from the County's previous provider in July 2019. Dkt. 18, at 3. Nettles brings ten causes of action asserting Falck and various Doe defendants violated various California wage and hour statutes in a "boilerplate" complaint devoid of specific facts.[2] *See id*. The complaint identifies a proposed class of similarly situated individuals it defines as:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California.

Dkt. 1-3. Defendants employed Nettles and the other members of the putative class in California as hourly paid or non-exempt workers, and Nettles asserts she was employed by Falck from June 2019 to April 2021. Though not mentioned in her complaint, Nettles appears to have worked as a Vehicle Supply Technician responsible for restocking ambulances and otherwise preparing ambulances for emergency calls.

## III. LEGAL STANDARD

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When a defendant removes a case, the plaintiff may move to remand the case at any time on the basis that the federal court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). Courts strictly construe the removal statute against finding federal subject matter jurisdiction such that doubt regarding the right to remove an action should be resolved in favor of remand. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). The defendant bears the

---

proceedings in other courts" where "those proceedings have a direct relation to matters at issue" (citation omitted)).

[2] Falck points to several nearly identical complaints counsel for Plaintiff has filed in other actions.

burden to show removal was proper. *Provincial Gov't of Marinduque*, 582 F.3d at 1087.

## IV. DISCUSSION

The parties dispute whether LMRA § 301 preempts Nettles' state law causes of action for overtime and/or meal and rest breaks and thus gives rise to a federal question.[3] Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a). "Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). Accordingly, a civil complaint raising claims preempted by § 301 raises a federal question and can properly be removed to a federal court.

*Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053 (9th Cir. 2007), supplies the relevant two-step test for whether § 301 preempts Nettles' state-law claims. At the first step of the *Burnside* analysis, courts assess whether a right was conferred by a state law rather than by a CBA. *Id.* at 1059. If a right "exists solely as a result of the CBA, then the claim is preempted." *Id.* If the right "exists independently of the CBA," the second prong of the inquiry turns on whether a right is "substantially dependent on analysis" of a CBA. *Id.* (citing *Caterpillar v. Williams*, 482 U.S. 386, 394 (1987)). Whether a right substantially depends on analysis of a CBA depends on whether a claim is resolvable by looking to versus interpreting the CBA. *Id.* at 1060. If it is necessary merely to look to the CBA to adjudicate a claim, the claim is not preempted; if, on the other hand, it is necessary to interpret the CBA to adjudicate a claim, the claim *is* preempted. *Id.* "Interpretation is construed narrowly," and "means something more than consider, refer to, or apply." *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 922 (9th Cir. 2018) (cleaned up). Where a provision of a

---

[3] Nettles makes several arguments that Falck's removal was procedurally improper such that remand is appropriate. These arguments need not be addressed given that, as detailed below, Nettles' claims are not preempted by the LMRA.

1  CBA is "only *potentially* relevant to the state law claims, without any guarantee that interpretation
2  or direct reliance on the CBA terms will occur," preemption is not triggered. *Humble v. Boeing*
3  *Co.*, 305 F.3d 1004, 1010 (9th Cir. 2002).

### A. Overtime Claims

Falck does not make an argument under the first prong of *Burnside*; instead, it argues, under the second prong, that Nettles' claims will require interpretation of the CBA. Falck claims that, in response to its requests for admission ("RFAs"), Nettles raised a dispute over the meaning of the terms "Vehicle Supply Technician" and the "non-field" (as compared to "field") job classification in the CBA.[4] The CBA distinguishes between "field" and "non-field" employees in specifying the overtime pay to which employees in each category are entitled but does not define those terms. Falck explains it has "followed the rules requiring the payment of daily overtime" for non-field employees since 2019, Dkt. 1, at 11–12, suggesting it believes § 514 (and, therefore, the CBA), rather than § 510, governs employees' entitlement to overtime. Falck, however, has not made a showing or submitted evidence that the CBA meets § 514's requirements, which are provided below:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Labor Code § 514; *see, e.g.*, *Ariola v. Raytheon CA Techs. Corp.*, No. CV 23-4664-MWF (AGRx), 2023 WL 5764296, at *7 (C.D. Cal. Sept. 6, 2023) (finding defendants failed to show § 514's requirements were satisfied).

It is thus necessary to proceed to step two of the *Burnside* analysis and assess whether

---

[4] In its opposition to Nettles' motion to remand, Falck appears to clarify the only terms it believes require interpretation for Nettles' overtime claims are "field" and "non-field." Thus, regardless of whether Nettles' job title was "Vehicle *Supply* Technician" or "Vehicle *Service* Technician," those titles are interchangeable and do not require CBA interpretation.

Nettles' right to overtime will require interpretation of the CBA. Falck argues interpretation will be necessary to determine whether Vehicle Supply Technicians like Nettles waived their entitlement to daily overtime. Falck, however, has not made any showing that the CBA complies with the requirements of § 514 such that that section—rather than § 510—applies to Nettles' overtime claim. *Compare Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 743, 749 (S.D. Cal. 2021) (finding defendants demonstrated plaintiff was "subject to a CBA compliant with section 514"). Thus, Falck's argument that the terms "field" and "non-field" must be interpreted to adjudicate whether the CBA's ostensible waiver of daily overtime for field employees applies is speculative, as there is no "guarantee that interpretation or direct reliance on the CBA terms will occur." *Humble*, 305 F.3d at 1010. Section 510 entitles employees to overtime for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek." Falck has not shown it will be necessary to look beyond this provision to determine the pay to which any employee was entitled.

Even were § 514 applicable, Falck has not met its burden to show it would be necessary to interpret, rather than merely look to, the meaning of "field" or "non-field" in the CBA so as to invoke § 301 preemption. It is not obvious, as a preliminary matter, that the parties dispute the meanings of "field" and "non-field" as descriptors for types of employees. *See Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). Nettles argues her responses to Falck's RFAs on the subject simply stated she lacked "enough information to admit or deny that she was within this classification"—not that she has a different interpretation of "non-field" than Falck. *See* Dkt. 17, at 16. There is nothing to suggest the parties hold clearly distinguishable views regarding the meaning of these terms.

Nor does the fact the CBA defines neither "field" or "non-field" mean judicial interpretation of those terms will be required. *See Huffman v. Pac. Gateway Concessions, Inc.*, No. 19-cv-1791, 2019 WL 2563133, at *6 (N.D. Cal. June 21, 2019) (holding court could "simply

look to" CBA to assess which job description applied to plaintiff). In *Huffman*, the court found assessing whether an employee qualified as a "Lead" required no more analysis than determining whether that employee qualified as a "Prep Cook" or a "Cook." *Id.*; *see also Cranton v. Grossmont Hosp. Corp.*, No. 22-cv-443 JLS (MDD), 2022 WL 16572028, at *7 (S.D. Cal. Nov. 1, 2022) (finding what constituted "special premium pay" determinable based on "factual assessment" outside of CBA). "Field" versus "non-field" positions, according to Falck's own representations, are easy to differentiate, as they are terms "routinely used within the ambulance industry." Dkt. 18, at 12. Falck explains "field" refers to "EMTs and Paramedics that operate the ambulances," whereas "non-field" refers to "support employees such as VSTs, who remain at headquarters as opposed to out in the community." *Id.* For these reasons, even had Falck shown "field" and "non-field" are necessarily implicated in this case, it has not shown a need to interpret those terms rather than merely look to them. There is no basis to find Nettles' overtime claims preempted under step two of the *Burnside* analysis.

## B. Meal and Rest Period Claims

Falck also argues Nettles' meal and rest period claims will require interpretation of CBA terms such that § 301 preemption is warranted under *Burnside*'s second step for those claims. For the reasons explained above, Falck's argument with respect to the "field" and "non-field" terms in the CBA does not persuade. Setting those terms aside, Falck also contends it will be necessary to interpret Article 10.10 of the CBA, which provides for employee meal and rest periods, in order to determine whether it is facially compliant with California law. Falck claims an actual dispute regarding whether Article 10.10 is facially compliant with California law providing for meal and rest periods arose when Nettles refused to admit, in response to Falck's RFAs, to that proposition. Article 10.10 provides as follows:

> Non-field employees shall be provided paid meal and rest breaks. Non-field employees shall be allowed a thirty (30) minute paid meal period reasonably close to the middle one third (1/3) of each eight (8) hour segment of their shift and any additional segment over three (3) hours. All employees are required to take at least one fifteen (15) minute paid rest break every four (4) hours. Employees may be called back from their breaks or meal periods due to

operational necessities. Bathroom breaks shall not be unreasonably denied.

This language is straightforward. A court would need only to look to Article 10.10's terms to determine what it requires. *See McGhee v. Tesoro Refining & Mktg. Co.*, 440 F. Supp. 3d 1062, 1069–70 (N.D. Cal. 2020) (finding defendants' policies neither "complicated" nor "necessarily disputed"). Nor has Falck shown an actual dispute regarding whether Falck's meal break policy is facially compliant with § 512. Falck does not point to any specific contract term in Article 10.10 that the parties dispute. *See Livadas*, 512 U.S. at 124. In other words, this is not an instance where specific industry terms in a CBA need interpretation. *See Marquez v. Toll Global Forwarding*, No. 18-cv-3054-ODW (ASx), 2018 WL 3218102, at 3 (C.D. Cal. June 28, 2018) (finding need to interpret specific terms like "load" and "unattended"); *see also Gunther v. North Coast Coop., Inc.*, No. 20-cv-2325, 2020 WL 3394547, at *8 (N.D. Cal. June 19, 2020) (finding no active dispute about meaning of terms where defendant did not "point to any specific terms that are undefined, disputed, ambiguous, or otherwise require some interpretation"). Though Falck contends the parties dispute what Article 10.10 authorized, "the focus remains on Defendant['s] actions, not the CBAs' authorizations." *McGhee*, 440 F. Supp. 3d at 1069.

Falck concludes Nettles must have had a different "understanding of the verbiage" of Article 10.10 because of her refusal to admit to RFAs that she was "authorized" to take or was "provided" appropriate breaks. Dkt. 1, at 16. It is far from clear this is the case. For one thing, Falck points to no particular "verbiage" to which the parties ascribe different meanings. Simply asserting a court will have to interpret whether a CBA provision complies with other authority is insufficient to demonstrate an active dispute. *See Linebarger v. Graphic Packaging Int'l, LLC*, No. SACV 20-00309 JVS (JDEx), 2020 WL 1934958, at *6 (C.D. Cal. Apr. 22, 2020) (noting mere assertion CBA conflicted with relevant wage order insufficient to demonstrate active dispute). Nettles' refusal to respond affirmatively to Falck's RFAs does not, without more, establish she disputes Article 10.10's facial compliance with § 512, especially given that she supplemented her RFA responses with interrogatory responses explaining she was not provided compliant breaks as a matter of practice.

Finally, Falck contends interpreting Article 10.10 will be critical to any eventual class certification analysis because that analysis will turn on whether the CBA is facially compliant with California law. As Falck acknowledges in its briefing, however, that a particular theory of liability (for instance, a facially deficient policy) may be a basis for class certification does not mean such a theory must serve as the basis for certification. There is no guarantee determining whether Falck provided compliant meal periods will require interpretation of Article 10.10.

## V. CONCLUSION

Nettles' motion to remand this action is granted because Falck has not met its burden to show Nettles' claims are preempted by § 301 of the LMRA.

**IT IS SO ORDERED**.

Dated: June 6, 2024

_____
RICHARD SEEBORG
Chief United States District Judge